No. 84-270

IN THE SUPREME COURT OF THE STATE OF MONTANA

1984

IN RE THE MARRIAGE OF

ROSEMARY ELAINE REINOEHL, f/k/a
ROSEMARY ELAINE PERRY,

      Petitioner and Respondent,

  -vs-

LARRY GEORGE PERRY,

      Respondent and Appellant.

APPEAL FROM:  District Court of the Fifth Judicial District,
             In and for the County of Madison,
             The Honorable Arnold Olsen, Judge presiding.

COUNSEL OF RECORD:

    For Appellant:

        Jackson Law Firm, Helena, Montana

    For Respondent:

        Jardine, McCarthy & Grauman; David Grauman, Whitehall,
        Montana
        Chester L. Jones, Virginia City, Montana

    For Children:

        Douglas L. Smith, Sheridan, Montana

Submitted on Briefs:  October 11, 1984

Decided:  December 6, 1984

Filed:

*Ethel M. Harrison*

—————————————————————
               Clerk

Mr. Justice Frank B. Morrison, Jr., delivered the opinion of the Court.

Larry Perry, respondent, appeals from the judgment of the District Court of the Fifth Judicial District, in Madison County, modifying a prior custody decree and transferring custody of their four children to petitioner, Rosemary Reinoehl.

On November 23, 1983, Rosemary Reinoehl moved the district court to modify the prior custody decree dated July 25, 1980, and grant her custody of their four children. After recommendation from the Director of the Madison County Welfare Department, interview with each child, and a hearing on the matter, the trial court granted the motion. Respondent's motion to stay execution of judgment pending appeal was denied.

Rosemary and Larry Perry dissolved their marriage by decree on November 29, 1979. They had four children; Justin, now 17; Keith, now 14; Leslie, now 11; and, Neil, now 9. The court's determination of custody was reserved pending investigation. The Director of the Madison County Welfare Department submitted a report on January 16, 1980, indicating that the children preferred to live with their mother but both parents were capable of providing a home for the children. Despite the preference of the children, the trial court awarded their custody to Larry, and granted Rosemary restrictive visitation rights in its July 23, 1980, order.

Three and a half years later, November 17, 1983, Rosemary filed a motion to modify the 1980 custody decree. The accompanying affidavit alleged that due to a change in the circumstances the present environment seriously endangered the physical, mental and emotional health of the children and

that their best interest would only be served by making Rosemary the custodial parent. The Director of the Madison County Welfare Department was appointed to reinvestigate the homes of Larry and Rosemary with respect to the children's custody and care.

On November 18, 1981, Larry married Karen Allen, the custodial parent of her four minor children. Larry, Karen and the eight children live in his five-bedroom ranch house, seven and a half miles east of Twin Bridges. All eight children are responsible for daily chores on the farm operation. Larry advocates that hard work, a ranch life and responsibilities properly prepare children for adulthood. He does not permit the children to participate in school or extracurricular activities until they enter high school.

Larry, a devoted member of a non-denominational Christian group, raises the family according to his religious beliefs. His church group lacks a traditional organizational structure. He described his religion as "just a fellowship" of "workers" who hold gospel meetings in private homes. Three of Larry's natural children are "professed" (vowed to serve God), in this religious group enabling them to participate in the "meetings." Larry believes that children should learn at a young age to abide with rules and regulations, starting in the family. He testified that he "physically disciplined" his children for disobedience.

Rosemary Perry married Dan Reinoehl and moved to Ennis, Montana. The Reinoehl's purchased a four-bedroom house on 2.8 acres within walking distance from local schools. Dan has two daughters, ages 8 and 11, who live in Ennis with their mother and visit their father frequently. Dan is employed as a school bus mechanic and driver. Rosemary works

3

full-time at the Madison County Nursing Home. Although Dan and Rosemary do not attend church, Dan's daughters do.

The Director of the Madison County Welfare Department observed in his report filed with the court January 25, 1984, that the original custody award did not follow the children's wishes and severely limited Rosemary's visitation rights. The Director noted that the Perry family was a classic case of a strained divorce with the children caught in the middle. Although investigating Director commented he had no reason to believe that one parent is the more appropriate custodian than the other, he recommended "Rosemary definitely should be allowed much more visitation, if not custody of the three younger children."

After interviewing the four children individually in chambers the trial judge granted the motion and ordered the custody of all four Perry children transferred to Rosemary. Larry Perry appeals.

The issues are:

1. Did the evidence presented at the hearing establish the change in circumstances required under 40-4-219, MCA?

2. Did the evidence establish that the present environment with the respondent (appellant) Larry, seriously endanger the physical, mental, moral or emotional health of the children as required under section 40-4-219, MCA, so as to support a change of custody?

3. Whether the Court considered the wishes of all the children, and, more especially, those over 14 years of age, as to their custodian.

The welfare of the children is the paramount consideration in awarding custody. A.R.C. v. C.K.C. (Mont 1983), 661 P.2d 459, 462. In custody modification actions, the best interest must be balanced with the underlying legal

4

presumption in favor of custodial continuity. The modification statute, 40-4-219, MCA, codifies this policy of continuity by establishing jurisdictional prerequisites which must be satisfied before the issue of "best interest" can be reached. In sum, the modification statute sets out a two-part test. R.L.S. v. Barkhoff (Mont. 1983), 674 P.2d 1082, 1087. The threshold jurisdictional test is followed by the substantive test of best interest of the children.

The statute places a heavy burden on the person seeking modification to prove that modification of the decree is necessary to serve the best interest of the children. In order to carry that burden, the moving party must satisfy one of four jurisdictional prerequisites enumerated in subsections (a), (b), (c), or (d). Only (c) and (d) are applicable to the appeal before us.

> Pertinent language of 40-4-219(1)(c) & (d) provides:

> "40-4-219. Modification. (1) The court may in its discretion modify a prior custody decree if it finds, upon the basis of facts that have arisen since the prior decree or that were unknown to the court at the time of entry of the prior decree, that a change has occurred in the circumstances of the child or his custodian and that the modification is necessary to serve the best interest of the child and if it further finds that:

> ". . .

> "(c)  the child's present environment endangers seriously his physical, mental, moral, or emotional health and the harm likely to be caused by a change of environment is outweighed by its advantages to him; or

> "(d)  the child is 14 years of age or older and desires the modification."

In a recent decision, this Court construed the statutory requirements for modification in this manner:

> "The statute sets out a two part test. The first part of the test contained two subparts which bear a qualifying relation to each other. Gilmore v. Gilmore (1975), 166 Mont. 47, 530 P.2d 480. There must be a change of circumstances, but that change is not measured in a vacuum. The change must be

5

significant enough in relation to the best interests of the child that those interests are no longer served by the decree in force. The best interests of the child in a modification proceeding are judged by the criteria of Section 40-4-212, MCA. Schiele v. Sager (1977), 174 Mont. 533, 571 P.2d 1142. The second part of the test also involves two subparts which bear less of a relation than those above, but are intertwined nonetheless. The primary custodian may not be changed unless the court finds the enumerated dangers exist, and the advantages of change outweigh the disadvantages."
R.L.S. v. Barkhoff, 674 P.2d at 1087.

The first issue is whether sufficient evidence supports the change in circumstances required by 40-4-219(1).

Ample evidence supports the trial court's findings relating to the change of circumstances of the father and children since the divorce. Larry's marriage to Karen Allen resulted in ten family members residing in their five-bedroom ranch house. These living accommodations for the children were definitely more crowded and considerably less private. Larry's membership in a non-denominational religious group advocating rigid religious beliefs may have altered his values and concepts of raising his children. At any rate, physical discipline has become more pronounced.

The second and third issues address the requisite jurisdictional standards and are discussed jointly.

With regard to Justin and Keith, both 14 years old or older, 40-4-219(1)(d), MCA, permits modification of their custody arrangement to serve their best interest, if they desire such a change in custodian. Justin stated without equivocation that he desired to live with his mother. Keith's preference as told to the trial judge in chambers is more ambiguous in that he expressed his desire to live with both parents, but in any event to see more of his mother.

The other jurisdictional question is whether the present environment with Larry seriously endangers the physical, mental, moral or emotional health of the children to warrant

6

modification of custody. The trial judge's findings on this issue are sufficiently supported by credible evidence on the record.

Finding No. 12 provides:

"There is evidence to support the determination that the methods of discipline employed by the respondent, especially as to the older children have become unduly harsh, possibly resulting in misbehavior of the oldest child, Justin."

When questioned about his standards of discipline and goals in raising his children, Larry testified:

"A. I have been of the belief that a youngster should learn at a young age that he has to abide with the rules and regulations. And I have spanked my kids when they don't obey the rules.

"* * *

"Q. Have you ever beaten your kids?

"A. I don't call it beating. No, I don't beat my kids.

"Q. But you have physically disciplined them on the behind?

"A. Yes.

Larry admitted using a stick on the "hind side" of his oldest son and booting him in the buttocks with the side of his boot "a time or two." The Court pursued its own interrogation of Larry on this issue.

"THE COURT: Well, was Justin abused severely in any way?

"THE WITNESS: I don't think so.

"THE COURT: Was he bruised?

"THE WITNESS: He was bruised on the buttocks, yes.

"THE COURT: Was he bruised on any other part of the body?

"THE WITNESS: Shoulder, back.

THE COURT: And--

THE WITNESS: Right before the stick hit him, he moved his arm and he bruised it. It was across the wrist.

The fact that the custodian has not inflicted such severe disciplinary practices upon the younger children is not conclusive. The potential for serious harm is sufficient to contemplate modification of custody, as long as the best interest of the child is served.

This Court held:

"In summary, we will not interpret the provisions of the modification statute so narrowly as to prevent trial courts from assuming jurisdiction over modification petitions where substantial, credible evidence of a potential danger is presented by a petitioner during the case-in-chief." Sarsfield, 671 P.2d at 602.

Having concluded that the potential danger to the children was a sufficient change in circumstances to justify modifying the prior decree, the trial court is still bound to consider the best interests of the children before deciding that transfer of custody should be ordered.

Applying the facts found by the trial court there is no error. In Finding No. 14 the court stated,

"That based upon the facts relating to the best interest of the minor children and their welfare, it is determined that, because of the location of petitioner's home, her stable employment picture, and other relevant and positive changes in circumstances and facts, that it would be, and is in the best interests of said minor children if they be placed in the custody, care and control of their mother . . ."

In the Finding No. 13 the court does not specifically use the "best interest" language, but states:

"There is evidence to support the determination that the children are being raised in such a manner so as to neglect proper social development and without sufficient social interaction with their peers; that a home near Ennis, Montana, within walking distance of the schools and other related facilities, as is the petitioner's, will provide more opportunity and availability for the children to communicate and interact with peers and others on a more frequent and desirable manner and basis."

This Court will look through the form to the substance of the district court's ruling. Barkhoff at 1088. The trial

court apparently felt that the strict social rules which Larry imposed upon his children were not in the best interest of their personal development. Larry prohibited the children from participating in any school or extracurricular activities until they entered high school. He advocated that hard work and ranch life properly prepared them for adulthood.

This Court has a limited standard of review in custody modification appeals.

> "The findings of a trial judge will not be disturbed on appeal where they are based on substantial though conflicting evidence, unless there is a clear preponderance of evidence against such findings. (cites omitted) It is not the function of this Court to resolve conflicts in the evidence. (cite omitted) The trial judge has the superior advantage of observing the demeanor and credibility of the witnesses, (cites omitted) and we will not dispute his or her particular resolution of conflicting statements unless the evidence clearly preponderates against the findings." Sarsfield, 671 P.2d at 603.

This Court may consider only whether substantial credible evidence supports the findings. We see no indication of any abuse of discretion which would require overturning those findings. The evidence supports modification of the custody decree necessary to serve the best interest of the Perry children due to change of circumstances in the children's environment. The change found by the trial court has arisen since the prior decree and has created a danger to the childrens' welfare which is not outweighed by the disadvantages caused by change of custody.

The judgment of the trial court is affirmed.

Justice

We concur:

9

_Daniel J. Shea_

_L.C. Gulbrandson_

Justices